(C. D. 666)

B. R. Anderson & Co. *v.* United States

United States Customs Court, Second Division

(Decided July 13, 1942)

*Lawrence & Tuttle* (*Charles F. Lawrence* and *George R. Tuttle* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Francis X. O'Donnell*, special attorney) for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of Seattle, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation invoiced as "type." Duty was levied thereon at the rate of 30 per centum ad valorem under the provision in paragraph 388 of the Tariff Act of 1930 for "New types." It is claimed that said merchandise is properly entitled to free entry under the provision in paragraph 1791 for "typewriters."

At the hearing, held at Seattle on November 12, 1941, the plaintiff offered in evidence the testimony of a single witness, Henry S. Tatsum, an assistant professor of Japanese at the University of Washington, who, after identifying a picture of the so-called Japanese typewriter in which the imported type is used, and which picture was admitted in evidence as illustrative exhibit A, testified in part as follows:

Q. Having Illustrative Exhibit A before you, would you please describe this machine and state how it operates, referring to the parts as you go along?—A. The typewriter is made along the same principle as our western typewriter, except that the types are loose. Our typewriter has the type fixed but in this case they have any number of characters necessary to make a complete writing so they have loose types which are set in this font and with this hammer that goes in the center it lifts the type out of the font and brings it to the carriage and strikes it against the carriage.

*      *      *      *      *      *      *

Q. Is the paper placed on the roll?—A. Yes.

Q. How is the type gathered so that it is placed upon the paper; by what action?—A. It is a hammer action. The hammer has the function of picking out the type from the font and after picking it up, it functions like our western typewriter.

Q. The individual pieces of type are picked up and by the same action they are brought flat against the paper?—A. By the hammer action, yes.

Q. How is the type selected?—A. You select your own type. In other words, in our western typewriter, the type is already arranged, but here we have a chart too, which shows where the types are, and there is also an auxiliary font so when you cannot find it here you go to the auxiliary font.

Q. What I should have asked you is: does the cylinder move so that it is directly over the particular pieces of type you wish to use at a particular time?—A. Yes.

Q. When you use it, does the cylinder move of itself over that piece of type?—A. The cylinder moves exactly like in our western typewriter, but of course ours moves vertically whereas this is horizontal. That is the only difference.

Q. About how many characters are there in the Japanese language?—A. About forty thousand.

Q. And approximately how many characters were covered by this importation, do you know?—A. In this set?

Q. Yes.—A. About nine thousand.

Q. Were any of the characters that were covered by this importation duplicates?—A. There was not a single duplicate.

*     *     *     *     *     *     *

Q. Professor, why did the University import approximately nine thousand pieces of different characters?—A. In order to take care of the work in Chinese and in Japanese.

Q. And when they obtained that quantity of approximately nine thousand pieces or characters, did they have a complete set of the characters of the Chinese and Japanese language?—A. No, it is only the characters that are in current use, more frequently used characters.

Q. Couldn't the machine have been operated and been effective as a typewriter without this quantity of characters that you imported? In other words, were all those characters needed?—A. For our work, yes.

*     *     *     *     *     *     *

On cross-examination the witness testified in part as follows:

X Q. As I understood you on direct examination in answer to Mr. Tuttle's question, as to whether the machine was incomplete without the remaining 31,000 characters, you said so far as your work is concerned, for your purpose, it was complete; is that right?—A. We needed that many characters to carry on our work.

*     *     *     *     *     *     *

Judge DALLINGER. Do I understand that this machine came in at the same time that these nine thousand characters were imported?

Mr. TUTTLE. That is correct.

Judge DALLINGER. What did the collector assesss duty on the machine as?

Mr. TUTTLE. It was passed free as a typewriter.

By Mr. O'DONNELL:

X Q. Now on this invoice which was shown to you by Mr. Tuttle before, I note that the first item is "1 set BANNO ⌊Hobun typewriter, with accessories, Class 3."—A. Yes.

*     *     *     *     *     *     *

X Q. Can you tell me exactly what that item covered without regard to the other items on the invoice?—A. That is the typewriter as you see it here.

X Q. With the font complete?—A. Yes, and they do have a press that goes with it, with a standard number of types.

X Q. Isn't it a fact that the typewriter could be used as such just as it is shown there?—A. For some purposes, yes.

X Q. But not for your work at the University?—A. No, for our purposes we have to have the other types, to do our work.

X Q. And for that reason you imported these nine thousand characters?—A. That is an auxiliary font made by the company.

X Q. In other words, if I understood the Japanese language and wished to write, not a technical work but a letter or something like that, I could use the typewriter with the type imported with it; is that right?—A. Yes, but with one provision, that every company that orders it usually orders the types with the several characters that they need in their own work.

X Q. It could be used though for ordinary communication and correspondence?—A. Yes, if it is merely correspondence and not specialized work.

On redirect examination the witness produced a paper containing Japanese characters printed on the typewriting machine as imported, which paper was admitted in evidence as illustrated exhibit B. He also produced two sheets of paper containing Japanese characters printed with the auxiliary type constituting the imported merchandise at bar, which sheets were admitted in evidence as collective illustrative exhibit C. The testimony of the witness then continued as follows:

Judge DALLINGER. As I understand it, in order to have a typewriting machine complete for every possible contingency, you would have to have the whole forty thousand characters?

The WITNESS. Yes, if you were to produce a dictionary.

Judge DALLINGER. Whereas in an American typewriter, just the letters of the alphabet are sufficient for that purpose?

The WITNESS. Yes, sir.

Judge DALLINGER. It doesn't make any difference how long the word is, even the word "transsubstantiation," even that can be written by the American typewriter?

The WITNESS. Yes, sir.

Judge DALLINGER. But the Japanese typewriter, as I understand it, if you wanted the type for every possible word, you would have to have the complete set of forty thousand characters; is that right?

The WITNESS. That is right.

Upon this record counsel for the Government in his brief filed herein contends that the imported articles are not integral parts of the typewriter which was imported therewith; and that even if they were, there being no provision for such parts in said paragraph 1791, the claim of the plaintiff alleged under said paragraph must be overruled.

We have carefully examined the cases cited by counsel, and while at first sight they seem to support the Government's contention, nevertheless we incline to the opinion that the decision which appears to be here controlling is that in the case of *Norma Company of America* v. *United States*, 6 Ct. Cust. Appls. 89, T. D. 35338. In that case the appellate court had before it certain machine tools which were accompanied in the same shipment by grinders, chucks, spindles, turning

devices, and other attachments for use in connection with said machine tools. Duty was levied upon the imported articles under paragraph 199 of the Tariff Act of 1909 as manufactures of metal not specially provided for. It was claimed that said articles were properly dutiable under paragraph 197 of said act as machine tools. The latter paragraph contained no provision for parts of machine tools, just as the present paragraph 1791 contains no provision for parts of typewriters. In holding said articles to be classifiable as entireties with the machine tools in the same shipment, the court said:

> We think, speaking generally, the true interpretation of the paragraph is that any detachable or adjustable parts of a machine tool which are indispensable to enable it to perform the manifold-operations for which it is designed, if imported therewith, not including reserve, duplicate, extra, or spare parts or purely hand tools or appliances, and not including belts designed to connect the tool with the motive power, are properly parts of a machine tool. To illustrate, one importing a machine tool designed to drill metal with drills of varying sizes would be entitled to import therewith as a constituent part thereof one set of the detachable, adjustable parts necessary and required to enable it to drill all the different sized holes for which, it was designed, because otherwise it could perform only a part of its functions, while its availability, desirability, and practical use and value might depend upon its ability to drill holes of different sizes.

In the instant case, the evidence is uncontradicted that the entire 9,000 pieces of type, each representing different letters or characters in the Japanese alphabet, were necessary for the work which the accompanying typewriter was constructed and designed to accomplish at the University of Washington. In other words, the addition of the imported types was necessary to enable the accompanying machine to perform the manifold operations for which it was designed.

Upon all the facts and the law we therefore hold the said type constituting the imported merchandise at bar to be properly entitled to free entry, together with the accompanying typewriter, as an entirety, under said paragraph 1791, as alleged by the plaintiff. That claim is therefore sustained, but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.